UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
*Electronically Filed*

| | |
|---|---|
| CHURCHILL DOWNS RACETRACK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LABORERS' INTERNATIONAL UNION OF NORTH AMERICA,<br>LOCAL UNION NO. 576,<br><br>Defendant. | Civil Action No: 3:19-CV-595-DJH<br><br>**COMPLAINT TO VACATE ARBITRATION AWARD** |

Now comes Plaintiff Churchill Downs Racetrack, LLC ("Plaintiff" or "Churchill Downs"), by counsel, and for its Complaint states as follows:

**PRELIMINARY STATEMENT**

1. Pursuant to Title 29 of the United States Code, §185(c), Section 301 of the Labor Management Relations Act ("LMRA"), Plaintiff requests that this Court issue an Order vacating an arbitration award rendered in connection with a collective bargaining agreement between Plaintiff and Defendant.

**JURISDICTION**

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. §185(c). This Complaint is timely filed within the applicable statute of limitations period.

**VENUE**

3. This action properly lies in the Western District of Kentucky pursuant to 28 U.S.C. §1391(b) because the claim arose in this judicial district.

1

**PARTIES**

4. Plaintiff is a limited liability corporation organized under and existing by virtue of the laws of the Commonwealth of Kentucky.

5. Plaintiff maintains its principal office at 700 Central Avenue, Louisville, Kentucky 40208.

6. Plaintiff owns and operates Churchill Downs Racetrack ("CDRT"), a thoroughbred horseracing facility and backside stable area located at 700 Central Avenue in Louisville, Kentucky. CDRT is famous for establishing and hosting the Kentucky Derby since 1875.

7. Plaintiff owns a second location in Louisville located at 4520 Poplar Level Road.

8. The Poplar Level Road location contains Derby City Gaming, an 85,000 square foot facility offering pari-mutuel wagering on an historical racing machine ("HRM") platform, as well as a training track and stable area that support CDRT.

9. Derby City Gaming, LLC, which owns and operates the Derby City Gaming facility, is a wholly owned subsidiary of Plaintiff.

10. Defendant Laborers' International Union of North America, Local Union No. 576 ("Defendant" or "the Union"), is an unincorporated association doing business in the Commonwealth of Kentucky as a labor union representing employees in an industry affecting commerce as defined by Section 2 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §152 and Section 301 of the LMRA, 29 U.S.C. §185. The Union has been recognized as the exclusive collective bargaining representative of certain of Plaintiff's employees.

## FACTUAL ALLEGATIONS

11. Plaintiff and Defendant are parties to a collective bargaining agreement (the "CBA") which is in effect from February 15, 2018 to February 14, 2023. Relevant excerpts from the CBA, cited to in the Complaint, are attached hereto as Exhibit A.

12. The CBA contains a Management Rights clause which reserves to Plaintiff the right to decide what work would be performed by bargaining unit employees and what work would not be performed by bargaining unit employees at its operations.

13. Article II of the CBA provides:

ARTICLE II
MANAGEMENT RIGHTS

> Except as otherwise limited by the provisions of this Agreement, the Company shall have the following rights:
>
> 1. The Company shall have the full and exclusive direction, control and Management of the racetrack in its operation in order that a maximum of efficiency may be maintained both in connection with the work of the Employees as well as in connection with the facilities, machinery and devices to be used.
>
> 2. The Company shall have the right to determine, regulate and modify the starting time and the number of Employees that may be assigned or allocated to a job, operation or department. The Company shall notify the Union within 24 hours of any changes.
>
> 3. The Company shall exercise the regular and customary functions of management, including the right to establish, enforce, change, abolish, or modify existing rules and policies, applicable to employees covered by this Agreement and to establish, enforce, change, abolish or modify operational procedures as it deems necessary and to discipline employees for just cause. As long as the Company's policies and procedures do not conflict with the tenets of this contract, those policies and procedures will govern. The Company shall have the right to establish and enforce reasonable quality and service standards for its employees, business and services and

to evaluate employees based on such quality and service standards. The Union will have the right to grieve the reasonableness of such standards.

4.      <u>The Company shall have the right to determine **whether** and to what extent the Company's business and the work required in its business shall be performed by employees covered by this Agreement.</u>

5.      <u>The failure by the Company to exercise its full rights of management in one situation will not preclude the Company from exercising its rights in future instances.</u>  The enumeration of management prerogatives herein is not intended to be inclusive, nor is it the intent of this article to interfere with employee rights granted under this Agreement.

(emphasis added)

14.     The CBA contains an Article setting forth those classifications and categories of employees employed by Plaintiff who are covered under the CBA.

15.     Article I of the CBA provides:

ARTICLE I
<u>RECOGNITION</u>

Section 1.  The Employer hereby recognizes the Union as the sole collective bargaining agent with respect to wages, hours, rates of pay, and other conditions of <u>employment for all full-time, hourly, maintenance department and housekeeping department Employees</u> employed at 700 Central Avenue, and 4520 Poplar Level Road ("Trackside"), Louisville, Kentucky facilities, including all Employees of the Employer engaged in general maintenance of the track and its facilities, and including truck drivers, mechanics, tractor operators, landscape Employees, general laborers and maintenance personnel, janitorial services; and excluding office clerical Employees, restroom attendants, guards and/or watchmen, professional Employees and supervisors as defined in Section 2 (11) of the National Labor Relations Act, and casual labor as defined in Section 3.

(emphasis added)

16. The CBA contains an Article providing that the classifications and categories of employees employed by Plaintiff who are covered by the CBA will not be altered by the introduction of expanded gaming at either of the locations referenced in Article I.

17. Article XXI of the CBA provides:

ARTICLE XXI
EXPANDED WAGERING

> If the Company introduces at Churchill Downs Racetrack or Trackside any form of wagering in addition to pari-mutuel wagering, the Company agrees that such expanded wagering will not affect the Union's right to continue to represent Housekeeping and Maintenance personnel consistent with their rights under this Agreement.

18. Approximately 70 bargaining unit employees, who perform housekeeping and maintenance work, are currently covered under the CBA. Those bargaining unit employees are all assigned to CDRT.

19. There are seasonal fluctuations in Plaintiff's business due to the fact that CDRT has three live racing meets spread out over the Spring, Summer, and Fall.

20. To account for an increased need for maintenance and housekeeping work during those live racing meets, Plaintiff historically has supplemented its bargaining unit employees by outsourcing maintenance and housekeeping work performed at CDRT.

21. In 2013, the parties engaged in contract negotiations which resulted in the ratification of a collective bargaining agreement between the parties.

22. During the 2013 contract negotiations, Plaintiff proposed modifications to Article II, Management Rights.

23. Plaintiff made clear to the Union during those negotiations that the proposed changes to Article II were specifically intended to allow Plaintiff greater flexibility in outsourcing or subcontracting maintenance and housekeeping work.

24. The most substantive change to Article II, Management Rights was the inclusion of the language contained in Section 4 of that article:

> The Company shall have the right to determine whether and to what extent the Company's business and the work required in its business shall be performed by employees covered by this Agreement.

25. That language expanded the right of Plaintiff to decide what work would be performed by bargaining unit employees (i.e., full-time employees of Plaintiff) and what work would be performed by individuals other than bargaining unit employees (e.g., part-time employees of Plaintiff, subcontractor employees) at the locations covered under the collective bargaining agreement.

26. Plaintiff negotiated for and obtained those broad management rights during the 2013 contract negotiations.

27. The proposed language of Article II, Section 4 was accepted by the Union, ratified by the Union membership, and ultimately memorialized in the 2013 collective bargaining agreement.

28. In 2018, the parties again engaged in contract negotiations. Those contract negotiations resulted in the ratification of the CBA.

29. The Union did not offer any proposals concerning Article II, Management Rights, in general, or Section 4 of Article II, in particular, during the 2018 contract negotiations.

30. There were no discussions or proposals during the 2018 contract negotiations concerning bargaining unit employees performing work at Derby City Gaming. No representations were made by Plaintiff concerning the potential for bargaining unit employees to transfer to Derby City Gaming.

31. Derby City Gaming opened for business in 2018, approximately nine months after the CBA was ratified.

32. Derby City Gaming offers pari-mutuel wagering on an HRM platform. That wagering is classified as pari-mutuel wagering in that customers are betting in competition with other Derby City Gaming customers on the outcome of the same HRM races. The wagering, in its simplest terms, permits players to bet on replays of past horse races without being able to identify the race.

33. Plaintiff is only permitted by law to offer pari-mutuel wagering. No other type of gambling or wagering is available at Derby City Gaming.

34. There are no bargaining unit employees performing work at Derby City Gaming.

35. All maintenance and housekeeping services at Derby City Gaming are performed by subcontractor employees. The current subcontractor providing those services is C&W Facility Services.

36. Section 4 of Article II, Management Rights of the CBA provides Plaintiff with the right to outsource maintenance and bargaining unit work as may be needed to appropriately manage Plaintiff's operations and resources.

37. Plaintiff negotiated for and obtained those broad management rights during the 2013 contract negotiations.

38. Plaintiff then exercised those rights when it determined that the unique operational needs at Derby City Gaming were best served by outsourcing all maintenance and housekeeping work to subcontractors.

39. Plaintiff utilizes subcontractor employees to perform the same housekeeping and maintenance work at Derby City Gaming as it has had such subcontractor employees perform at CDRT in the past.

40. The Union filed a grievance on September 19, 2018.

41. In the grievance, the Union claimed that Plaintiff breached the CBA by subcontracting the performance of maintenance and housekeeping work at Derby City Gaming.

42. Plaintiff denied the grievance, and it was processed without resolution to arbitration before Arbitrator Mark C. Travis who conducted a hearing at which both parties were represented on March 15, 2019.

43. Arbitrator Travis issued his Opinion and Award on July 24, 2019 ("Award"). A copy of the Award is attached hereto as Exhibit B.

44. Arbitrator Travis set forth the following standard, unsupported by either arbitral precedent or the provisions of the CBA, for determining whether Plaintiff was entitled to subcontract maintenance and housekeeping work at Derby City Gaming, "[a]bsent a contractual restriction, subcontracting is generally allowed, so long as it is done in good faith and based on a reasonable business decision, and does not subvert the labor agreement and/or seriously weaken the bargaining unit, or parts thereof." (Award, p. 9.)

45. The Arbitrator held that Article II, Management Rights of the CBA was limited by Article I, Recognition. (Award, p. 10.)

46. Arbitrator Travis relied on the language of Article XXI, Expanded Wagering of the CBA to support the right of the Union to the "preservation of housekeeping and maintenance work" though he acknowledged that "this provision is not controlling as additional forms of wagering have not been introduced." (Award, p. 10.)

47. The Arbitrator held that "the terms of Article II, Section 4, [do not] control the disposition of this grievance." (Award, p. 10.)

48. The Arbitrator stated that "[w]hile clearly some subcontracting had been performed in the past, the action taken by the Company in this situation is clearly beyond what had been done in the past." (Award, p. 11.)

49. The Arbitrator then argued that the actions of Plaintiff should be restricted by its prior "expressed intent" concerning subcontracting. (Award, p. 11.)

50. Arbitrator Travis determined, without reference to either arbitral precedent or the provisions of the CBA, that, "if the work being performed by the subcontractor is in fact the type of work performed by the bargaining unit, the decision is generally subject to greater scrutiny." (Award, p. 12.)

51. The Arbitrator further held that the decision to subcontract all maintenance and housekeeping work at Derby City Gaming would "prejudice the status and integrity of the bargaining unit." (Award, p. 12.)

52. Ultimately, the Arbitrator held that "[t]he Company violated Article I of the CBA by subcontracting all housekeeping and maintenance functions at its wholly owned subsidiary, Derby City Gaming, LLC, to C &W Facility Services." (Award, p. 13.)

53. The Arbitrator further ordered that Plaintiff "assign housekeeping and maintenance work at Derby City Gaming, LLC to bargaining unit employees" and that "[b]argaining unit members who were not offered the opportunity to perform work assigned to employees of C&W Facility Services, shall be made whole for all lost wages and benefits sustained." (Award, p. 13.)

**COUNT I**
**THE OPINION AND AWARD OF THE ARBITRATOR DID NOT DRAW IT ESSENCE FROM THE COLLECTIVE BARGAINING AGREEMENT.**

54. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 - 53 as if fully written herein.

55. The Arbitrator held in the Award that subcontracting of maintenance and housekeeping bargaining unit work would "prejudice the status and integrity of the bargaining unit." In so holding, the Arbitrator substituted his personal opinion for the language of the CBA, and ignored the language of the CBA that "the Company shall have the right to determine whether and to what extent the Company's business and the work required in its business shall be performed by employees covered by this Agreement." The Award of Arbitrator Travis did not draw its essence from the CBA.

56. The Arbitrator held in the Award that subcontracting of maintenance and housekeeping bargaining unit work was restricted by the past practice of Churchill Downs as "the action taken by the Company in this situation is clearly beyond what had been done in the past." In so holding, the Arbitrator substituted his personal opinion for the language of the CBA, and ignored the language of the CBA that "[t]he failure by the Company to exercise its full rights of management in one situation will not preclude the Company from exercising its rights in future instances." The Award of Arbitrator Travis did not draw its essence from the CBA.

10

57. By holding both that Plaintiff had a right to subcontract maintenance and housekeeping work but was limited in determining the extent of such subcontracting, the Award of Arbitrator Travis did not draw its essence from the CBA.

58. By holding that Article II, Section 4, did not control the right of Plaintiff to subcontract maintenance and housekeeping work, the Award of Arbitrator Travis did not draw its essence from the CBA.

59. By holding that the right of Plaintiff to subcontract maintenance and housekeeping work was limited by Article I, Recognition, and Article XXI, Expanded Wagering, of the CBA, the Award of Arbitrator Travis did not draw its essence from the CBA.

60. By holding that Plaintiff violated Article I of the CBA by subcontracting all housekeeping and maintenance functions at Derby City Gaming, ordering Plaintiff to assign housekeeping and maintenance work at Derby City Gaming to bargaining unit employees, and ordering that unspecified, unidentifiable, and unknown bargaining unit employees not offered the opportunity to perform work at Derby City Gaming receive lost wages and benefits, the Award of Arbitrator Travis did not draw its essence from the CBA.

61. The Award of Arbitrator Travis should be vacated.

## COUNT II
## THE OPINION AND AWARD OF THE ARBITRATOR CONFLICTS WITH THE EXPRESS TERMS OF THE COLLECTIVE BARGAINING AGREEMENT AND IS WITHOUT RATIONAL SUPPORT.

62. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 - 61 as if fully written herein.

63. The Arbitrator held in the Award that subcontracting of maintenance and housekeeping bargaining unit work would "prejudice the status and integrity of the bargaining

unit." In so holding, the Arbitrator substituted his personal opinion for the language of the CBA, and ignored the language of the CBA that "the Company shall have the right to determine whether and to what extent the Company's business and the work required in its business shall be performed by employees covered by this Agreement." The Award of Arbitrator Travis conflicts with the express terms of the CBA and is without rational support.

64. The Arbitrator held in the Award that subcontracting of maintenance and housekeeping bargaining unit work was restricted by the past practice of Churchill Downs as "the action taken by the Company in this situation is clearly beyond what had been done in the past." In so holding, the Arbitrator substituted his personal opinion for the language of the CBA, and ignored the language of the CBA that "[t]he failure by the Company to exercise its full rights of management in one situation will not preclude the Company from exercising its rights in future instances." The Award of Arbitrator Travis conflicts with the express terms of the CBA and is without rational support.

65. By holding that Article II, Section 4, did not control the right of Plaintiff to subcontract maintenance and housekeeping work, the Award of Arbitrator Travis conflicts with the express terms of the CBA and is without rational support.

66. By holding that the right of Plaintiff to subcontract maintenance and housekeeping work was limited by Article I, Recognition, and Article XXI, Expanded Wagering, of the CBA, the Award of Arbitrator Travis conflicts with the express terms of the CBA and is without rational support.

67. By holding that Plaintiff violated Article I of the CBA by subcontracting all housekeeping and maintenance functions at Derby City Gaming, ordering Plaintiff to assign

housekeeping and maintenance work at Derby City Gaming to bargaining unit employees, and ordering that unspecified, unidentifiable, and unknown bargaining unit employees not offered the opportunity to perform work at Derby City Gaming receive lost wages and benefits, the Award of Arbitrator Travis conflicts with the express terms of the CBA and is without rational support.

68. The Award of Arbitrator Travis should be vacated.

### COUNT III
### THE OPINION AND AWARD OF THE ARBITRATOR IMPOSED AN ADDITIONAL REQUIREMENT NOT EXPRESSLY PROVIDED FOR IN THE COLLECTIVE BARGAINING AGREEMENT.

69. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 - 68 as if fully written herein.

70. The Arbitrator held in the Award that subcontracting of maintenance and housekeeping bargaining unit work would "prejudice the status and integrity of the bargaining unit." In so holding, the Arbitrator substituted his personal opinion for the language of the CBA, and ignored the language of the CBA that "the Company shall have the right to determine whether and to what extent the Company's business and the work required in its business shall be performed by employees covered by this Agreement." The Award of Arbitrator Travis imposed additional requirements on Plaintiff not provided for in the CBA or required by arbitral authority.

71. The Arbitrator held in the Award that subcontracting of maintenance and housekeeping bargaining unit work was restricted by the past practice of Churchill Downs as "the action taken by the Company in this situation is clearly beyond what had been done in the past." In so holding, the Arbitrator substituted his personal opinion for the language of the CBA, and ignored the language of the CBA that "[t]he failure by the Company to exercise its full rights of management in one situation will not preclude the Company from exercising its rights in future

instances." The Award of Arbitrator Travis imposed additional requirements on Plaintiff not provided for in the CBA or required by arbitral authority.

72. By holding that the right of Plaintiff to subcontract maintenance and housekeeping work should be restricted by its prior "expressed intent" concerning subcontracting, the Award of Arbitrator Travis imposed additional requirements on Plaintiff not provided for in the CBA or required by arbitral authority.

73. By holding that Plaintiff violated Article I of the CBA by subcontracting all housekeeping and maintenance functions at Derby City Gaming, ordering Plaintiff to assign housekeeping and maintenance work at Derby City Gaming to bargaining unit employees, and ordering that unspecified, unidentifiable, and unknown bargaining unit employees not offered the opportunity to perform work at Derby City Gaming receive lost wages and benefits, the Award of Arbitrator Travis imposed additional requirements on Plaintiff not provided for in the CBA or required by arbitral authority.

74. The Award of Arbitrator Travis should be vacated.

**COUNT IV**
**THE OPINION AND AWARD OF THE ARBITRATOR IS**
**BASED ON THE ARBITRATOR'S PERSONAL SENSE OF INDUSTRIAL JUSTICE**
**RATHER THAN THE TERMS OF THE COLLECTIVE BARGAINING AGREEMENT**

75. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 - 74 as if fully written herein.

76. The Arbitrator held in the Award that subcontracting of maintenance and housekeeping bargaining unit work would "prejudice the status and integrity of the bargaining unit." In so holding, the Arbitrator substituted his personal opinion for the language of the CBA, and ignored the language of the CBA that "the Company shall have the right to determine

whether and to what extent the Company's business and the work required in its business shall be performed by employees covered by this Agreement." The Award of Arbitrator Travis was based on the Arbitrator's personal sense of industrial justice rather than the terms of the CBA.

77. The Arbitrator held in the Award that subcontracting of maintenance and housekeeping bargaining unit work was restricted by the past practice of Churchill Downs as "the action taken by the Company in this situation is clearly beyond what had been done in the past." In so holding, the Arbitrator substituted his personal opinion for the language of the CBA, and ignored the language of the CBA that "[t]he failure by the Company to exercise its full rights of management in one situation will not preclude the Company from exercising its rights in future instances." The Award of Arbitrator Travis was based on the Arbitrator's personal sense of industrial justice rather than the terms of the CBA.

78. By holding that the right of Plaintiff to subcontract maintenance and housekeeping work should be restricted by its prior "expressed intent" concerning subcontracting, the Award of Arbitrator Travis was based on the Arbitrator's personal sense of industrial justice rather than the terms of the CBA.

79. By holding that Plaintiff violated Article I of the CBA by subcontracting all housekeeping and maintenance functions at Derby City Gaming, ordering Plaintiff to assign housekeeping and maintenance work at Derby City Gaming to bargaining unit employees, and ordering that unspecified, unidentifiable, and unknown bargaining unit employees not offered the opportunity to perform work at Derby City Gaming receive lost wages and benefits, the Award of Arbitrator Travis was based on the Arbitrator's personal sense of industrial justice rather than the terms of the CBA.

80. The Award of Arbitrator Travis should be vacated.

WHEREFORE, Plaintiff seeks judgment in its favor and moves for an Order from this Court granting the following relief:

(a) vacating the July 24, 2019, Opinion and Award of Arbitrator Travis; and

(b) awarding any other relief this Court deems proper.

*/s/ James U. Smith III*
Smith & Smith Attorneys
400 North, First Trust Centre
200 South Fifth Street
Louisville, Kentucky 40202
(502) 587-0761
(502) 589-5345 - fax
jus@smithandsmithattorneys.com

*Counsel for Plaintiff Churchill Downs, Inc.*