UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| CHURCHILL DOWNS RACETRACK, LLC, | Plaintiff/Counter Defendant, |
| v. | Civil Action No. 3:19-cv-595-DJH-CHL |
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL UNION No. 576, | Defendant/Counter Claimant. |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Churchill Downs Racetrack entered into a management agreement with C&W Facility Services under which C&W would provide all housekeeping and maintenance services at a newly constructed pari-mutuel wagering operation beginning in 2018. (Docket No. 12-4, PageID # 1409) The Union representing Churchill Downs' maintenance and housekeeping employees filed a grievance arguing that Churchill Downs violated the parties' CBA by subcontracting with C&W instead of using bargaining-unit employees for such services. (D.N. 11-1, PageID # 386) The grievance moved to arbitration, where the arbitrator found in favor of the Union. (D.N. 12-4, PageID # 1416) Churchill Downs filed this action to vacate the arbitration award, and the Union counterclaimed to enforce the award. (*See* D.N. 1; D.N. 6) Churchill Downs and the Union then filed cross-motions for summary judgment as to whether the arbitrator properly interpreted the CBA. (*See* D.N. 11; D.N. 12) For the reasons explained below, the Court will grant the Union's motion in part and deny Churchill Downs' motion.

**I.**

Churchill Downs operates facilities at 700 Central Avenue, Louisville, Kentucky, and 4520 Poplar Level Road, Louisville, Kentucky. (D.N. 12-4, PageID # 1407) This dispute concerns the

facility on Poplar Level Road. (*Id.*) The facility for many years contained a simulcast wagering facility and a boarding and training facility. (*Id.*, PageID # 1407-08) In 2012, Churchill Downs demolished the simulcast wagering facility. (*Id.*) In 2017-18, Churchill Downs constructed a new pari-mutuel wagering operation at 4520 Poplar Level Road, which is branded as Derby City Gaming. (*Id.*)

Throughout this period, bargaining-unit employees from Laborers' International Union of North America, Local Union No. 576 performed maintenance and housekeeping services at the boarding and training facilities at 4520 Poplar Level Road pursuant to the parties' collective bargaining agreement. (*Id.*, PageID # 1409) But no bargaining-unit employees have ever performed services at Derby City Gaming, which is also located at 4520 Poplar Level Road. (*Id.*) Instead, Churchill Downs entered into a subcontracting agreement with C&W Facility Services to provide all housekeeping and maintenance services at Derby City Gaming. (*Id.*) The Union filed a grievance arguing that this arrangement with C&W violated the parties' CBA. (*Id.*, PageID # 1404-05)

Pursuant to the CBA, the grievance proceeded to arbitration. (*Id.*) In the arbitration award, the arbitrator set out the procedural history, several of the CBA provisions, and the background facts. (*Id.*, PageID # 1404-09) Then, the arbitrator laid out the positions of the parties. (*Id.*, PageID # 1409) Churchill Downs' argument focused on Article II, Section 4 of the CBA, which states that Churchill Downs "shall have the right to determine whether and to what extent [Churchill Downs'] business and the work required in its business shall be performed by employees covered by this agreement." (*Id.*, PageID # 1411; *see* D.N. 12-2, PageID # 1112) In Churchill Downs' view, this provision was unambiguous and gave Churchill Downs an unrestricted right to subcontract any work covered by the CBA. (D.N. 12-4, PageID # 1411) The

Union, however, maintained that the provision was limited by a number of other sections in the CBA: the Recognition Clause in Article I; Article II, Section 5; Article XXI; and Exhibit A to the CBA. (*Id.*, PageID # 1409-10)  In addition, the Union argued that the past practices between the parties did not support Churchill Downs' interpretation of the CBA. (*Id.*, PageID # 1410-11)

After considering the parties' arguments, the arbitrator concluded that Churchill Downs' authority in Article II, Section 4 was limited by other provisions of the CBA. (*Id.*, PageID # 1413)  First the arbitrator pointed to the Recognition Clause of Article I, which states that Churchill Downs "recognizes the Union as the sole collective bargaining agent . . . for all full-time, hourly, maintenance department and housekeeping Employees employed at 700 Central Avenue and 4520 Poplar Level Road." (D.N. 12-4, PageID # 1413; *see* D.N. 12-2, PageID # 1109)  The arbitrator found that this provision limited Churchill Downs' authority to subcontract the maintenance and housekeeping work at Derby City Gaming (which is located at 4520 Poplar Level Road) to non-bargaining unit employees. (D.N. 12-4, PageID # 1413)  The arbitrator also noted that Article II, Section 5 stated that it was not "the intent of this article to interfere with the employee rights granted under th[e] Agreement." (*Id.*)  The arbitrator then cited Exhibit A to the CBA and Article XXI as sections that concerned employee rights under the agreement. (*Id.*)  Although Exhibit A and Article XXI did not apply to the current grievance, the arbitrator found them relevant in interpreting the scope of authority granted by Article II, Section 4. (*Id.*)  The arbitrator also looked to the parties' past practices, bargaining history, and the implications of adopting Churchill Downs' interpretation that the CBA gave it an unrestricted right to subcontract housekeeping and maintenance work. (*Id.*, PageID # 1414-15)

From this analysis, the arbitrator concluded that the CBA limited Churchill Downs' authority to subcontract under Article II, Section 4 and that Churchill Downs had breached the

3

CBA by completely subcontracting the maintenance and housekeeping work at Derby City Gaming.  (*Id.*, PageID # 1416)  As a remedy, the arbitrator ordered Churchill Downs to hire bargaining-unit employees for work covered by the CBA and to make whole the bargaining-unit employees not offered the work contracted to C&W.  (D.N. 12-4, PageID # 1416)  Churchill Downs asks the Court to vacate this award (D.N. 11), while the Union argues that the award should be enforced.  (D.N. 12)

## II.

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, the Court "need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).  If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed.  Fed. R. Civ. P. 56(e)(2)-(3).  To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of its claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

"The standard of review for cross-motions [for] summary judgment does not differ from the standard applied when only one party files a motion."  *Stevens v. CSX Transp., Inc.*, No. 17-74-HRW, 2018 WL 4686428, at *3 (E.D. Ky. Sept. 28, 2018) (citing *Taft Broad. Co. v. United*

*States*, 929 F.2d 240, 248 (6th Cir. 1991)). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Id.* (quoting *Taft Broad. Co.*, 929 F.2d at 248). "Thus, when the court reviews cross-motions for summary judgment, it 'must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party.'" *Id.* (quoting *Taft Broad. Co.*, 929 F.2d at 248).

"Federal labor arbitration case law is shaped largely by the strong congressional policy encouraging the resolution of labor disputes through arbitration procedures selected by the parties." *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Loc. 890L*, 656 F.3d 368, 371 (6th Cir. 2011). Courts "'afford great deference to the arbitrator's decision,' because the underlying 'question of contract interpretation [is] for the arbitrator.'" *Id.* (citations omitted). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Mich. Fam. Res., Inc. v. Serv. Emp. Int'l Union Loc. 517M*, 475 F.3d 746, 752 (6th Cir. 2007) (en banc) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987)). Thus, the Court examines arbitration awards using a standard that screens for "procedural aberration[s]."[1] *Id.* at 753. To determine whether an award has procedural aberrations, the Court asks three questions:

---

[1] Churchill Downs argues that a more stringent standard applies to review of arbitration awards. (D.N. 11-1, PageID # 399; D.N. 15, PageID # 1760-61) But in *Michigan Family Resources*, the Sixth Circuit explicitly overruled this more stringent standard. 475 F.3d at 753. As a result, the Court will evaluate the cross-motions for summary judgment under the standard described in *Michigan Family Resources*. *See Zeon Chems. L.P. v. United Food & Com. Workers, Loc. 72D*, 949 F.3d 980, 984 (6th Cir. 2020) (rejecting arguments that relied on cases predating *Michigan Family Resources*).

> [1] Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? [2] Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And [3] in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

*Id.* at 753. Churchill Downs argues that the arbitrator resolved a dispute not committed to arbitration, failed to construe the CBA, and issued an ambiguous and unenforceable award. (D.N. 15, PageID # 1764-73) The Union asserts that the arbitrator arguably construed the CBA and requests that the Court award attorney's fees for the Union. (D.N. 12-1, PageID # 1099-1103)

**A.      Acting outside the arbitrator's authority**

Churchill Downs appears to argue, without specifically referring to the *Michigan Family Resources* test, that the arbitrator exceeded his authority by considering not just the current alleged breach of the CBA, but also the future impact of subcontracting at Derby City Gaming. (D.N. 15, PageID # 1769-70) "An arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds his authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Mich. Fam. Res.*, 475 F.3d at 756. The parties' CBA commits to an arbitrator all disputes that arise under the terms and conditions of the CBA. (D.N. 12-2, PageID # 1118) Here, the dispute between the parties is whether Churchill Downs violated the CBA when it outsourced maintenance and housekeeping work at Derby City Gaming. (D.N. 12-4, PageID # 1405) Churchill Downs does not argue that this dispute is not subject to the arbitration clause in the CBA. (D.N. 15, PageID # 1760-69; *see* D.N. 12-2, PageID # 1118-19) In resolving this dispute, the arbitrator considered future outsourcing in his attempt to interpret how much outsourcing the CBA allowed. (D.N. 12-4, PageID # 1415) Thus, Churchill Downs' argument is best characterized as asserting that the arbitrator made an interpretive error and therefore did not "arguably construe" the CBA. *See Mich. Fam. Res.*, 475 F.3d at 756 (finding an

arbitrator does not exceed his authority by making an interpretive error). Because the CBA committed the present dispute to arbitration, the arbitrator did not exceed his authority. (D.N. 12-2, PageID # 1118)

**B.       Arguably construing or applying the contract**

A primary dispute between the parties is whether the arbitrator "arguably construed" the CBA. (D.N. 12-1, PageID # 1099; D.N. 15, PageID # 1764). Churchill Downs argues that the arbitrator did not "arguably construe" the CBA because he considered the past practices of the parties, inapplicable provisions of the CBA, and future outsourcing when interpreting the CBA. (D.N. 15, PageID # 1763-70) "'[So] long as the arbitrator is even arguably construing or applying the contract,' [the Court] will uphold the decision." *Zeon Chems.*, 949 F.3d at 983 (quoting *Misco*, 484 U.S. at 38). An arbitrator arguably construes the contract when the award bears all the "hallmarks of interpretation." *Econ. Linen & Towel Serv., Inc. v. Int'l Brotherhood of Teamsters, Teamsters Loc. Union 637*, 917 F.3d 512, 514 (quoting *Mich. Fam. Res.*, 475 F.3d at 754). An award bears the "hallmarks of interpretation" when the arbitrator "refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point does [the arbitrator] say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract." *Mich. Fam. Res.*, 475 F.3d at 754. The Court will enforce an award where the arbitrator's interpretation is plausible, even if the "merits analysis has some eyesores." *Zeon Chems.*, 949 F.3d at 983. On the other hand, the arbitrator fails to construe the contract when "the arbitrator's decision on the merits was so untethered from the agreement that it casts doubt on whether he was engaged in interpretation, as opposed to the implementation of his 'own brand of industrial justice.'" *Titan Tire Corp. of Bryan*, 656 F.3d at 374 (quoting *Mich. Fam. Res.*, 475 F.3d at 754).

7

The Sixth Circuit has enforced an arbitration award where the arbitrator interpreted the meaning of a subcontracting clause. *See Econ. Linen*, 917 F.3d at 513. In *Economy Linen*, the CBA between the company and the union included a clause that "treated the company as 'the exclusive judge of . . . subcontracting of all or any part of the work activity.'" *Id.* at 514. The company argued that this provision allowed subcontracting "without restriction." *Id.* The arbitrator, however, concluded that the broad subcontracting clause was limited by another provision in the CBA that prevented part-time employees from being employed at a higher wage than full-time employees. *Id.* The Sixth Circuit found that "the arbitrator grounded his opinion in the words of the collective bargaining agreement." *Id.* The arbitrator cited "the relevant contract provisions, analyze[d] each of them, set[] out the parties' competing arguments, and ultimately adopt[ed] one interpretation at the end of the opinion." *Id.* Thus, the opinion bore all "the hallmarks of interpretation," and the arbitrator had arguably construed the contract. *Id.* The court rejected the company's argument that the exclusive power to subcontract could not be limited by the provision concerning part-time employees because this was "simply another way of complaining that the arbitrator misinterpreted the contract, just the kind of 'interpretive error' beyond [the court's] reach in this setting." *Id.* (citing *Mich. Fam. Res.*, 475 F.3d at 756).

Here, as in *Economy Linen*, the arbitrator satisfied the "arguably construing" standard when he considered whether the CBA gave Churchill Downs an unrestricted right to outsource the maintenance and housekeeping work at Derby City Gaming. The opinion has all the "hallmarks of interpretation": the arbitrator set out the facts and the provisions of the CBA that he viewed as relevant to the dispute between the parties (D.N. 12-4, PageID # 1405-09); set out the parties' competing positions concerning interpretation of the CBA (*id.*, PageID # 1409-12); and analyzed Article II, Section 4, acknowledging that it "could be interpreted to authorize subcontracting." (*Id.*,

PageID # 1413)  The arbitrator found that other provisions in the CBA created ambiguity about the scope of Churchill Downs' authority to subcontract and ultimately concluded that these provisions limited Churchill Downs' authority to subcontract.  (*Id.*)  Since the arbitrator found ambiguity in the CBA, he did not fail to construe the CBA when he considered the parties' past practices.  *See Titan Tire Corp. of Bryan*, 656 F.3d at 374 (finding that an arbitrator "arguably construed" the CBA by looking to past practices to resolve ambiguity in the CBA); *see also Mich. Fam. Res.*, 475 F.3d at 755 (finding that ambiguity in a contract allows an arbitrator to consider past practices, even where considering past practices might lead to interpretive error).  Nothing in the arbitrator's analysis suggests that the arbitrator "was doing anything other than trying to reach a good-faith interpretation of the" CBA.  *Mich. Fam. Res.*, 475 F.3d at 754.

  Further, the arbitrator's conclusion in this case is not materially different from the arbitrator's conclusion in *Economy Linen* that a subcontracting clause was limited by the CBA. *See Econ. Linen*, 917 F.3d at 513.  Like the arbitrator in *Economy Linen*, the arbitrator in this case considered other provisions of the CBA and interpreted them as limiting the authority to subcontract under Article II, Section 4.  (D.N. 12-4, PageID # 1413)  While Churchill Downs contends that Exhibit A and Article XXI are inapplicable to the current dispute and that the arbitrator improperly considered future outsourcing, these arguments are unavailing because they are "simply another way of complaining that the arbitrator misinterpreted the contract," and such interpretive errors are beyond the scope of review.  *Econ. Linen*, 917 F.3d at 514.  As a result, these arguments do not demonstrate that the arbitrator was implementing his "own brand of industrial justice."  *Titan Tire Corp. of Bryan*, 656 F.3d at 374 (quoting *Mich. Fam. Res.*, 475 F.3d at 754).  Instead, the arbitrator arguably construed the CBA, and therefore the Court will enforce

9

the award. *See Zeon Chems.*, 949 F.3d at 983 ("'[So] long as the arbitrator is even arguably construing or applying the contract,' [the Court] will uphold the decision." (citation omitted)).

C.     **The arbitrator's remedy**

Even if the arbitrator "arguably construed" the CBA, Churchill Downs argues, it cannot comply with the arbitrator's remedy because the award is ambiguous and unenforceable. (D.N. 11-1, PageID # 417; D.N. 15, PageID # 1771-72) But "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Equitable Res., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC; Local 8-512*, 621 F.3d 538, 545 (6th Cir. 2010) (quoting *Misco*, 484 U.S. at 38). "[A]rbitrators have long had considerable 'flexibility' when 'formulating remedies.'" *Econ. Linen*, 917 F.3d at 515 (quoting *Enter. Wheel*, 363 U.S. at 597). "That's because '[t]he draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.'" *Id.* (quoting *Enter. Wheel*, 363 U.S. at 597).

The parties' CBA states that "[t]he decision of the Arbitrator shall be final and binding on both parties" and places no constraints on the types of remedy the arbitrator may order. (D.N. 12-2, PageID # 1119) In the absence of any other provision concerning remedies, the CBA leaves room for the arbitrator to fashion a remedy when he concludes that one party has breached the CBA. (*Id.*) Here, the arbitrator concluded that Churchill Downs violated the CBA and that the appropriate remedy was for Churchill Downs to hire bargaining-unit employees for work covered by the CBA and to make whole bargaining-unit employees not offered the work contracted to C&W. (D.N. 12-4, PageID # 1416). Nothing in this award gives the Court the authority to disagree with the judgment of the arbitrator. *See Equitable Res.*, 621 F.3d at 545; *see also Econ. Linen*, 917

F.3d at 515 (upholding an award for retroactive damages where subcontracting violated the CBA). Moreover, Churchill Downs' concerns about the impracticability of implementing the award should be addressed by the arbitrator: the award specifically noted that "the [a]rbitrator shall retain jurisdiction of this award for sixty (60) days for the sole purpose of resolving any disputes related to the implementation of the award." (D.N. 12-4, PageID # 1416)

**D.     Attorney Fees**

In its cross-motion for summary judgment, the Union requests that the Court award attorney fees. (D.N. 12-1, PageID # 1103) The Court finds that attorney fees are not warranted in this case. "[F]ee awards are appropriate in 'egregious cases of misconduct,'" not where a party has simply requested judicial review of an arbitration award. *Zeon Chems.*, 949 F.3d at 986 (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)) (finding attorney fees were not warranted when reviewing an arbitration award where the union made no specific showing of egregious misconduct); *compare Monroe Auto Equip. Co. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW), Monroe Auto Equip. Co., Unit of Loc. 878*, 981 F.2d 261, 270 (6th Cir. 1992) (finding egregious conduct didn't exist where a party argued that an arbitration award should be vacated under the court's limited scope of review), *with Aircraft Braking Sys. Corp. v. Loc. 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 163 (6th Cir. 1996) (finding egregious conduct existed when a party raised a legal argument rejected by the court in a related proceeding about the same dispute). Here, the Union argues that it is entitled to attorney fees because Churchill Downs sought judicial review before complying with the arbitration award. (D.N. 12-1, PageID # 1105; PageID # 1789) It offers no evidence of egregious misconduct by Churchill Downs, however. (D.N. 12-1, PageID # 1103-05). Thus, no fee award is warranted. *See Zeon Chems.*, 949 F.3d at 986.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     The Union's motion for summary judgment to enforce the arbitration award (D.N. 12) is **GRANTED**, but the Union's request for attorney fees is **DENIED**.  A separate judgment will be entered this date.

(2)     Churchill Downs' motion for summary judgment (D.N. 11) is **DENIED**.